E-FILED

Thursday, 03 September, 2009  04:00:41 PM

Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| ALGER B.  COOTS, ) | |
| **Plaintiff,** ) | |
| v. ) | |
| ) | **Case No.  08-2197** |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| sued as Michael J. Astrue, ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

In October 2007, Administrative Law Judge (hereinafter "ALJ") Peter Caras denied Plaintiff Alger Coots Jr.'s applications for disability insurance benefits and supplemental security income.  The ALJ found that Plaintiff was not disabled because he can perform a number of jobs that exist in significant numbers in the economy.

In August 2008, Plaintiff filed a Complaint for Judicial Review (#3) against Defendant Michael Astrue, Commissioner of Social Security, seeking review of the ALJ's decision to deny him social security benefits.  In January 2009, Plaintiff filed a Motion for Summary Judgment or Remand (#11).  In April 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#15).  After reviewing the record and parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment or Remand **(#11)** be **DENIED**.

### I.  Background
### A.  Procedural Background

In November 2004, Plaintiff filed an application for disability insurance benefits and supplemental security income claiming he became disabled in January 2003 due to borderline intellectual functioning and affective/mood disordeR. (R. 24.)  The Social Security Administration (hereinafter "SSA") denied Plaintiff's application initially and upon reconsideration.  (R. 43-46, 36-38.)  In August 2005, Plaintiff filed a timely request for a hearing and the ALJ conducted a video hearing in August 2007.  (R. 537.)  An attorney represented

Plaintiff at the hearing and Plaintiff and vocational expert (hereinafter "VE") Ronald Malik testified. (R. 537.) In October 2007, the ALJ denied Plaintiff's applications. (R. 14-22.)

In July 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (R. 6-9.) In August 2008, Plaintiff appealed the decision by filing a complaint with this Court pursuant to 42 U.S.C. § 405(g), requesting that the Court grant summary judgment in Plaintiff's favor or remand the case for rehearing.

### B. Factual Background

Both parties' memoranda describe the factual background concerning Plaintiff's medical, school, and work history, and the Court will not repeat it here.

### C. Testimony at the Hearing

In August 2007, the ALJ conducted a hearing regarding Plaintiff's applications for disability insurance benefits and supplemental security income. Plaintiff and the VE testified at the hearing.

Plaintiff lives with his wife and two sons. He has been married for ten years. His wife fills out all of his job applications for him because he reads "[v]ery little." (R. 546.) Plaintiff testified that the highest level of education he completed successfully was second grade. After second grade, he never "passed" another grade, but the school advanced him due to his age. For example, Plaintiff testified that he was in a sixth grade learning disabled class when he was fifteen years old, so the school placed him in a ninth grade learning disabled class due to his age. Plaintiff dropped out of high school in 1990.

After leaving school, Plaintiff testified that a friend taught him how to change oil which he did for a few years. Plaintiff then worked as a dishwasher, but quit when the restaurant asked him to perform other tasks. Plaintiff worked on a hog farm, but quit because he was upset by the way the animals were treated. Plaintiff worked as a lube technician at several locations, but quit

these jobs because he could not work the computeR. Plaintiff last worked removing parts for an auto shop, but quit because he had difficulty reading the orders.

Plaintiff testified that he was only able to pass his driver's license test because an employee read the test to him.

Plaintiff testified he has been "battling depression" since approximately 2000. (R. 549.) Plaintiff stated that his depression makes it difficult to concentrate and remember things. Plaintiff then clarified that his memory had been bad before he became depressed. Plaintiff testified that he had seen a psychiatrist once, but he could not remember when that appointment took place. (R. 550.)

Plaintiff testified that, in March 2004, he was helping friends move a porch when it fell on his neck. (R. 551.) A subsequent MRI showed abnormalities in discs 5 through 7. Plaintiff stated that this accident caused him pain, discomfort, tingling down his left arm, and numbness, and his condition has remained approximately the same since then with good and bad days. (R. 552.). Although Plaintiff has not lost any strength in his left arm, he avoids using it because activity exacerbates his pain. He stated that once he begins to experience neck and arm pain, it will last for three to four days. He experiences this pain when he does yard work, and he takes Vicodin which helps a little. (R. 554.) Plaintiff testified that his doctors have recommended injections to reduce his neck and back pain, but he decided not to have the injections because the side effects were too serious. (R. 555-56.) He has not seen any doctors concerning his neck and back pain for some time, but Dr. Eleanor Peters prescribes Vicodin for the pain. (R. 557.)

Plaintiff testified that Dr. Peters diagnosed him with bipolar disorder and prescribed Seroquel. (R. 558.) Plaintiff stated that he also has violent outbursts for which he takes Xanax, and possibly restless leg syndrome for which he takes sleeping pills.

3

Plaintiff has applied for social security benefits in the past.  (R. 558.)  He testified that he did not appeal the decisions the first two times the SSA denied him social security benefits because he was unfamiliar with the system.  Plaintiff decided to reapply because people told him he should.

Plaintiff stated that he does not need the assistance of a cane, brace, or other device to walk.  (R. 558.)  When he drives, it is generally to take his wife to work.  Plaintiff stated that he will accompany his wife to stores, but tries to stay away from people because he has visions. (R. 559.)  Plaintiff tries to help his father by doing yard work on the property they share.  He used to ride a dirt bike, but he sold the bike because, after his accident, he was in too much pain to ride it.

The ALJ asked the VE if a hypothetical individual could perform Plaintiff's past jobs if that individual had a limited education, and was limited to light or sedentary work with only occasional climbing, balancing, stooping, kneeling, crouching, crawling, or interaction with people, must avoid concentrated exposure to unprotected heights and hazardous machinery, and could only perform one- or two-step tasks that were not regarded as very stressful and did not require significant memorization.  (R. 560.)  The VE testified that these limitations would eliminate all of Plaintiff's past work.  The ALJ then asked what jobs would be available to this hypothetical individual at the light and sedentary levels.  (R. 561.)  The VE stated that, in the light category, the individual could work as a hand packager, sedentary pharmaceutical packager, or packing machine tendeR. At the sedentary level, the individual could work as a sorter, document preparation clerk, or cleaneR. The VE stated that these jobs were simply representative and that the hypothetical individual could perform other jobs as well.  The VE testified that Plaintiff would be able to perform these jobs even with a second grade education, although he might need help filling out applications.  (R. 562.)

**D.  The ALJ's Decision**

"Disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis.  20 C.F.R. § 416.920(a-f).  At each step, if the ALJ affirmatively finds the claimant disabled or not disabled, the inquiry ends, but if no determination can be made, the Commissioner proceeds to the next step.  20 C.F.R. § 416.920(a)(4).  If the claimant is currently employed or was previously employed during the relevant period, he is not disabled.  20 C.F.R. § 416.920(a)(4)(i).  The second question is whether the claimant has a severe medical impairment that will last at least twelve continuous months.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant does not have a severe impairment, the inquiry ends.  *Id.*  However, if the claimant has a severe impairment, at the third step, the ALJ asks whether the severe impairment meets or equals one of the impairments listed in Appendix 1 to Subpart P of Part 404 of Title 20.  20 C.F.R. § 416.920(a)(4)(iii).  If it does, the claimant is disabled.  *Id.*  If it does not, between steps three and four, the ALJ determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations.  20 C.F.R. § 404.1545.  At the fourth step, the ALJ asks whether the claimant can perform his past relevant work with his current impairments.  20 C.F.R. § 416.920(a)(4)(iv).  If he can, then he is not disabled.  *Id.*  If he is not able to perform his past work, the fifth and final question is whether, with his current limitations, he can perform other work which exists in significant numbers in the national economy.  20 C.F.R. § 416.920(c)(1).

In the present case, at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful employment since his alleged onset date of January 2003.  At the second step, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the cervical spin, borderline intellectual functioning, bipolar disorder, and depressive disordeR. (R. 16.)  At the third step, the ALJ found that none of these impairments met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  At the fourth step, the ALJ found Plaintiff was not capable of doing his past relevant work.  However,

at the fifth step, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the economy.  Therefore, he was not disabled.

## II.  Standard of Review

The ALJ's decision is subject to review by this Court pursuant to 42 U.S.C. § 405(g) but the Court's role is "extremely limited."  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  This Court does not review the facts *de novo*, rather, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This Court's task is to determine whether substantial evidence in the record supports the ALJ's decision.  *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).  Thus, if reasonable minds could differ as to whether or not a plaintiff is entitled to benefits, the Court must uphold the ALJ's decision.  *Id.* at 978.

The Court defers to the ALJ's credibility findings.  This deferential standard acknowledges that the reviewing court does not have the opportunity to hear and see witnesses, as the ALJ does.  *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006).  Therefore, courts uphold an ALJ's credibility finding as long as the record affords some support for the finding.

## III.  Discussion

Plaintiff argues that his case should be reversed or remanded because the ALJ made (1) an improper assessment of Plaintiff's disability under Listing 12.05, (2) an incomplete RFC finding, (3) an erroneous credibility finding, and (4) a flawed determination at step five.

**A.  Listing 12.05**

Plaintiff first argues that the ALJ ignored substantial evidence in the record suggesting that Plaintiff meets the requirements of Listing 12.05.

As an initial matter, the parties disagree as to what score Plaintiff obtained on the 1987 performance IQ test.  Plaintiff contends his performance IQ score was 60.  In contrast, the ALJ read Plaintiff's 1987 performance IQ score as 90.  (R. 20.)  The Court agrees with the ALJ. Although the handwritten number is somewhat difficult to read, the typed explanation of the scores indicates that the actual score was 90.  (R. 109.)

To be found disabled under Listing 12.05, a claimant must satisfy the requirements in the introductory paragraph of the Listing *and* the requirements described in one of the subsidiary Paragraphs A, B, C, or D, which describe the severity of the impairment.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria [in Paragraphs A, B, C, or D], we will find that your impairment meets the listing.").

Furthermore, based on the language in the introductory paragraph, the claimant must establish that he had "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment *before age 22*."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added); *see Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (stating that the "regulations do require the [ALJ] to determine that the claimant's mental 'deficits' were manifested before the age of 22").  For example, in *Griffin v. Barnhart*, the court cited with favor *Maresh v. Barnhart,* in which the Eighth Circuit court noted that record evidence confirming the claimant's special education instruction during childhood, in addition to low IQ results taken at age 37, supported the claimant's claim of developmental (that is, before the age of 22) mental retardation.  *Griffin v. Barnhart*, 198 Fed. App'x 561, 564 (7th Cir. 2006) (citing *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006)).  Thus, the court agreed with the

Eighth Circuit court's conclusion that the claimant's assignment to special education classes demonstrated that his impairment began before the age of 22.

Here, Plaintiff's special education classes and the evidence of his inability to read and write show that his subaverage intellectual functioning manifested before age 22. Nevertheless, to be considered disabled under Listing 12.05, Plaintiff must also satisfy one of the specific severity requirements described in Paragraphs A, B, C, and D.

Plaintiff does not challenge the ALJ's decision as to Paragraph A. Plaintiff contends that only one of his verbal, performance, or full scale IQ scores must be within the appropriate range to satisfy the requirements in Paragraphs B, C, or D of the Listing. He notes that every IQ test showed that Plaintiff had at least one score between 60 or 70. Specifically, in 1987, his performance IQ was 60. (R. 109.) As noted above, that score was actually 90. Plaintiff also notes that, in 2002, his full-scale IQ was 70 (R. 222), and in 2005, his verbal IQ was 60, his performance IQ was 55, and his full-scale IQ was 53 (R. 248).

Plaintiff is correct when he states that the Regulations require only one of the IQ scores to be within the ranges specified under Listing 12.05. However, the ALJ determined that Plaintiff did not have "valid" IQ scores within the specified ranges. Specifically, Paragraph B requires a "valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(B). The ALJ stated that the record contained no "valid" IQ scores of 59 of less. He subsequently explained (R. 20) that he did not find Plaintiff's 2005 scores valid based on Dr. James Mason's June 2005 report and conclusion that he suspected Plaintiff was malingering with regard to his effort on the IQ tests. (R. 277.)

In addition, the ALJ determined that Plaintiff did not satisfy the additional requirements outlined in Paragraphs C and D. Paragraph C requires a valid IQ score of 60 through 70 and "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). However, the ALJ stated that Plaintiff did not satisfy the requirements because he did not have a valid IQ score of

60 through 70 or a physical or mental impairment that imposed a significant work-related limitation.  The ALJ explained elsewhere in his decision his reasoning regarding Plaintiff's physical and mental impairments, concluding that the record did not establish a disabling condition.  (R. 20.)  The ALJ also described his reasoning regarding Paragraph D and concluded that Plaintiff did not satisfy its requirements based on the evidence in the record.

Thus, as to Paragraphs B, C, and D of the Listing, the ALJ found that Plaintiff did not have a valid IQ score that satisfied the Listing and he explained his reasoning for finding that the Plaintiff did not satisfy the remaining requirements of Paragraphs C and D.  This Court cannot replace the ALJ's findings with its own assessment of the evidence.  *Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir. 1989).  So long as, in light of all the evidence, reasonable minds could differ concerning whether Plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits.  *Books*, 91 F.3d at 978.  Here, based on the evidence, the Court cannot conclude that the ALJ erred by finding that Plaintiff's impairments did not satisfy the Listing.

## B.  The ALJ's RFC Finding

Plaintiff next argues that the ALJ erred by determining Plaintiff's RFC because he selectively reviewed the evidence and relied on his own lay opinion of the evidence without sufficiently explaining his reasoning.

The ALJ cannot determine a plaintiff's RFC in the absence of medical evidence.  *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).  However, any medical evidence or opinions upon which an ALJ relies "need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints."  *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).  When the ALJ does reject medical evidence, he must "minimally articulate his reasons for crediting or rejecting" that evidence.  *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992).

### 1.  Physical RFC

Concerning his physical impairments, Plaintiff specifically contends that the ALJ did not adequately explain what evidence he used to determine that Plaintiff is able to perform light work in spite of his cervical disc disease.  The ALJ relied on clinic notes from  Dr. S. G. Raju, Dr. Robert Hurford, and Dr. Vathiar Tazudeen, but Plaintiff contends that the ALJ played doctor and made a lay finding as to what those records show.  The Court disagrees.  The ALJ noted that Dr. Hurford "encouraged [Plaintiff] to be active"; Dr. Raju stated that Plaintiff had no restrictions in work-related activities; and Dr. Tazudeen noted that Plaintiff had no weakness or numbness in his extremities and could lift up to 20 pounds which the ALJ stated was consistent with light work.  (R. 313, 254, 301.)  Based on this evidence, the Court concludes that those records provide substantial evidence that supports the ALJ's physical RFC determination and the ALJ did not play doctor.

Plaintiff also contends that the ALJ ignored evidence in the record that suggests a manipulation limitation would be appropriate.  Plaintiff states that the ALJ did not explain his dismissal of Dr. Hurford's statement that activity exacerbates Plaintiff's pain.  However, as the ALJ pointed out, Dr. Hurford also stated in his report that Plaintiff had "really no restriction on his activities" and the doctor encouraged Plaintiff to be active.  (R. 313.)  Thus, this report does not support any manipulation limitations and the ALJ adequately explained his reasoning for concluding that Plaintiff could perform light work.  Accordingly, the Court concludes that the ALJ did not err when assessing Plaintiff's physical RFC.

### 2.  Mental RFC

Plaintiff also contends that the ALJ's mental RFC finding fails to account for Plaintiff's short attention span, limited judgment, difficulty with pace, persistence, and visual-motor skills, impulse disorder, aggression, and psychosis.

The ALJ described Plaintiff's mental RFC by limiting him to "unskilled work of one or two-step operations, requiring minimal reading, not regarded as very stressful, and not requiring significant memorization, with occasional interactions with others."  (R. 18.)

Plaintiff's first memorandum did not raise the issue of whether the ALJ adequately took into account Plaintiff's limitations in concentration, persistence, and pace when he limited him to "one and two-step operations."  However, both parties addressed this issue in their supplemental briefs, so the Court will address the issue here.

The Seventh Circuit court recently reiterated its position regarding whether it is appropriate for an ALJ to phrase hypothetical questions about mental RFC in terms of the work a claimant can perform as opposed to providing a claimant's limitations and allowing the VE to determine on his own what types of work the claimant can perform.  *Stewart v. Astrue*, 561 F.3d 679, 686 (7th Cir. 2009).  In addressing the issue of whether the Commissioner was substantially justified for arguing that "the ALJ accounted for Stewart's limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interaction with coworkers or the general public," the court stated that it had "rejected the very same contention before."  *Id.*  In *Craft v. Astrue*, the court also found that the ALJ's limitation to simple, unskilled work did not adequately address a claimant's undisputed difficulty with concentration.  *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008). Similarly, in *Young v. Barnhart*, the court found that a hypothetical question that limited a claimant to "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" was not sufficient to address that claimant's moderate limitation on his ability to interact with the general public.  *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004). *See also Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003) (finding that a hypothetical question that includes borderline intelligence does not account for deficiencies in concentration).  However, the Seventh Circuit court has allowed an ALJ to describe a claimant's limitations in terms of the work he can perform if the record contains a physician's opinion that a claimant may perform a certain type of work in spite of his

11

limitations.  Thus, the ALJ may rely on a physician's statement if the physician has translated the claimant's mental limitations into terms describing the work the claimant can perform.

Consistent with the case law on this issue, the Court concludes that an ALJ cannot, in general, translate a mental limitation into words describing work, such as unskilled, simple, repetitive, routine, one- or two-step, or any similar characterization because these descriptions may not account for all the limitations a doctor meant to convey.  *See Stewart*, 561 F.3d at 686; *Craft*, 539 F.3d at 677-68; *Young*, 362 F.3d at 1004; *Kasarsky*, 335 F.3d at 544.  Only if a doctor used the descriptive language to describe what work a claimant can perform in spite of his limitations can the ALJ use those terms in the RFC or hypothetical questions to the VE.  *See Johansen*, 314 F.3d at 289.

In the present case, state agency examiner Dr. Patricia Beers noted in her Psychiatric Review Technique form that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  (R. 235.)  She also found that Plaintiff had moderate limitations in his ability to understand, remember, and carry out detailed instructions and to maintain attention and concentration for extended periods.  (R. 239.)  She then stated as follows: "Claimant is assessed under the diagnosis Borderline Intelligence.  He is able to understand, recall and execute simple one-to-two step instructions and to carry out simple routine tasks.  His social skills and adaptive capacities remain intact.  Capable of SGA [(substantial gainful activity)]."  (R. 241.)  Based on Dr. Beers' description of Plaintiff's mental RFC, the Court cannot conclude that the ALJ erred when he described Plaintiff's mental RFC.

The ALJ also discussed the evidence related to Plaintiff's social functioning in explaining why he found that the evidence did not establish a disabling mental condition.  Among other things, he noted that, while Plaintiff had told Dr. McArdle that he has visions of harming people, Plaintiff had never threatened or attacked anyone and he testified that he had never been violent toward anyone.  Plaintiff also stated that he does not believe he has any trouble getting along with people.  (R. 249.)  Nevertheless, the ALJ acknowledged that Plaintiff

12

had mild limitations in social functioning and limited Plaintiff to only occasional interaction with others in a work setting to address any difficulties in this area.  (R. 20.)  The record does not support a difficulty with visual-motor skills.  In fact, the record shows that Plaintiff has always been considered to have superior visual-motor skills, and Plaintiff's jobs have been primarily mechanical in nature.  (R. 105.)

This Court cannot replace the ALJ's findings with its own assessment of the evidence. *Pugh,* 870 F.2d at 1274.  The Court must affirm the ALJ's decision if substantial evidence supports his findings and inferences reasonably drawn from the record, even though some evidence may also support the claimant's position.  42 U.S.C. § 405(g); *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993).  The Court may reverse the decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision.  *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).  In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether Plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits.  *Books*, 91 F.3d at 978.  Because the evidence and Plaintiff's testimony provide support for the ALJ's decision, the Court cannot conclude that the ALJ erred when he assessed Plaintiff's mental impairments.

### C.  The ALJ's Credibility Finding

Plaintiff next argues that the ALJ improperly based his credibility finding on his own lay opinion of the evidence.

When evaluating an ALJ's credibility determination, courts give great deference to the ALJ's assessment because the ALJ has the ability to see and hear witnesses who testify at the hearing.  *Sims*, 442 F.3d at 537-38; *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993). Therefore, the ALJ's credibility determination will generally not be disturbed as long as it has some support in the record.  *Id.*  In a recent decision, the Seventh Circuit court stated that a court reviewing a credibility determination "merely examine[s] whether the ALJ's determination was reasoned and supported."  *Elder*, 529 F.3d at 413 (citing *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2001)).

13

In the present case, the ALJ found Plaintiff's claims regarding his physical limitations not credible because Drs. Raju, Hurford, and Tazudeen all opined that Plaintiff had no physical limitations, and because Plaintiff did not seek treatment for his neck pain for 18 months after his accident, he has not availed himself of alternative pain therapies, and he testified that he does house work and yard work. The ALJ relied on all of this information when he found that Plaintiff's physical impairments were not as severe as he claimed.

Regarding his mental impairments, the ALJ noted that Plaintiff did not seek mental health treatment for bipolar disorder or depression until 2006 despite an alleged onset of these difficulties in 2003, Plaintiff did not report any sleep or appetite disturbances, Dr. Mason noted that Plaintiff had put forth minimal effort during his evaluation and the doctor suspected malingering, progress notes often indicated that Plaintiff was "doing better," and Plaintiff knew his violent thoughts were a problem and had never hurt anyone.

Plaintiff contends that Seventh Circuit authority prohibits reliance on treatment notes in assessing credibility. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). However, in *Bauer*, the ALJ used the treatment notes as the primary evidence in his credibility finding and disregarded the doctor's later statements. *Id.* In the present case, the ALJ considered treatment notes as one part of his overall credibility determination. Thus, the Court finds that Plaintiff's argument on this point is not dispositive.

Plaintiff also contends that the ALJ played doctor and relied on his own lay opinion when he referred to Plaintiff's failure to avail himself of alternative treatments for pain. The Court notes that the ALJ did not suggest a course of treatment in his opinion when discussing Plaintiff's failure to obtain treatment. Instead, he noted that Plaintiff had not continued a recommended course of physical therapy or availed himself of other pain management options. The ALJ properly found that this undermined Plaintiff's claims regarding the severity of his pain. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (stating that the claimant's "repeated failure . . . to seek medical treatment [for "extreme pain"] provides support for the ALJ's credibility finding").

14

Plaintiff also contends that his July 2006 visit to the emergency room is evidence of more severe psychosis and the ALJ improperly ignored this evidence.  The Court finds this argument similarly unpersuasive because the record shows that Plaintiff told Dr. Peters that he only went to the emergency room to get a refill on his Xanax prescription; he became agitated when the emergency room staff informed him he needed different medications.  (R. 366.)

Based on the ALJ's explanation of his reasoning regarding Plaintiff's credibility, the Court cannot conclude that the ALJ patently erred by finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.  "[O]nly when the ALJ's determination lacks any explanation or support . . . [will we] declare it to be patently wrong."  *Elder*, 529 F.3d at 413-14.

## D.  ALJ's Reliance on the VE's Testimony

Plaintiff next contends that the Court should reverse or remand the ALJ's decision because the ALJ erred by relying on the VE's testimony.  Specifically, Plaintiff contends that the ALJ (1) did not include all of Plaintiff's limitations in his hypothetical questions to the VE and (2) did not comply with SSR 00-4p when he asked the VE at the onset of questioning to identify inconsistencies between his testimony and the *Dictionary of Occupational Titles*.

In support of the latter argument, Plaintiff relies on *Harris v. Astrue*, No. 06-222, 2008 WL 410577, *8 (N.D. Ind. Feb. 11, 2008) (not reported), in which the district court explained that it had previously "concluded that because the ALJ questioned the VE regarding inconsistencies between her testimony and the DOT before the VE gave her substantive testimony, the questioning was inadequate to satisfy SSR 00-4p.  The Court found that the Ruling requires questioning after the VE has provided her testimony."  *Id.*

An ALJ satisfies his duty under SSR 00-4p if the ALJ (1) asks the VE whether any conflict exists; and (2) obtains a reasonable explanation for and resolves any conflict that is identified.  Thus, where the ALJ inquires and no conflict is identified, the ALJ may rely on the VE's testimony.  *See Donahue v. Barnhart*, 279 F.3d 441, 445-47 (7th Cir. 2002) (stating in

dictum (because SSR 00-4p was promulgated subsequently and thus was not directly applicable) that where no conflict was identified at the hearing, the ALJ's reliance on the VE's testimony was proper, and the plaintiff was foreclosed from raising the conflict on appeal).

Here, as in *Harris*, before questioning the VE, the ALJ asked the VE to indicate if his testimony conflicted with the DOT or any labor-relevant manuals. (R. 560; Although the transcript indicates that this inquiry was partly inaudible, the parties do not disagree as to the missing content.) After considering Plaintiff's argument and the *Harris* case, the Court respectfully declines to follow the *Harris* court's reasoning and conclusion that an inquiry *prior* to the VE's testimony cannot satisfy an ALJ's duty under SSR 00-4p. In the present case, the ALJ specifically asked the VE to identify any inconsistencies between his testimony and the DOT. Furthermore, Plaintiff failed to identify any potential conflicts at the hearing. Therefore, consistent with *Donahue*, this Court concludes that the ALJ fulfilled his duties under SSR 00-4p, and Plaintiff may not now challenge the ALJ's determination by raising any purported conflicts.

Finally, Plaintiff contends that the ALJ provided the VE with an incomplete hypothetical question. Plaintiff contends that the jobs the VE listed require manual dexterity, constant reaching and handling, and reading, writing, and arithmetic skills that are beyond Plaintiff's abilities. The Court previously found that the ALJ did not err by determining Plaintiff's RFC. No evidence in the record suggests that Plaintiff has limited manual dexterity. While Dr. Hurford did note some pain associated with arm movement, he concluded that Plaintiff had no restrictions on his activities and he encouraged Plaintiff to be active. (R. 313.) Moreover, the VE testified that a person with a second grade education, which was based on Plaintiff's testimony, would be able to perform the jobs the VE identified. Therefore, the Court finds that the ALJ's hypothetical question to the VE was complete based on the evidence. As a result, the ALJ's reliance on the VE's testimony was proper.

### IV.  Summary

For the reasons stated above, this Court recommends Plaintiff's Motion for Summary Judgment or Remand **(#11)** be **DENIED**.  The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten working days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 3rd day of September, 2009.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE

17